Burket, J.
As the statutes of this state stood before the revision of 1880, “lands and tenements” could be levied upon and sold to pay debts, sec. 420 of the Code of Civil Procedure, and statutes prior thereto. Under those statutes it was held that an equity could not be levied upon and sold to pay debts, and that a judgment did not create a lien upon an equity. Baird v. Kirtland, 8 Ohio, 21; Morris v. Way, 16 Ohio, 469; Loring v. Melendy, 11 Ohio, 355, and many other cases.
The statute was amended in 1880, sec. 5374, so as to make “lands and tenements, including vested interests therein,” subject to levy and sale for the payment of debts.
Manifestly the interest which Mr. Patton retained in the surplus of the value of the real estate over and above the amount required to pay his note, and which was to be returned to him by the terms of the instrument, was a vested interest, and therefore subject to levy and sale to pay his debts.
*582 By the next section, 5375, it is provided that “Such lands and tenements, within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered.” “Such lands and tenements,” in this section, embraces the same as “lands and tenements, including vested interests therein,” in the preceding section. It is therefore clear that the judgment in question became a lien upon the vested interest of Mr. Patton in the lands covered by this instrument, from the first day of the April term, 1894, of the court of common pleas, that is, April 7, 1894, and that the lien of the judgment attached, by relation, under the statute, to such vested interest as he then had in said lands.
Let us next inquire what vested interest he then had in the lands upon which a lien could attach in favor of the judgment creditor, and against Mr. Patton and his grantee, the bank.
Section 4106, Revised Statutes, provides how “A deed, mortgage, or lease of any estate or interest in real property” shall be executed. The instrument in question was either a deed or mortgage. It was not a lease. The plaintiff in error claims that it was in legal effect a deed, while the defendant in error claims that it was in legal effect a mortgage. The statute does not define either a deed or a mortgage, but seems to take it for granted that those terms are well understood and need no definition. It must be clear that this instrument is not simply a deed, as that word is usually understood, because a deed conveys full title for a certain consideration without any interest remaining in the grantor in the realty conveyed. True, there may be conveyances by deed upon conditions, but in all such cases the grantor retains no vested interest in the estate or interest conveyed. *583 and if it ever returns to him, it returns upon breach of a condition, and in such cases his interest is contingent and not vested. A conveyance may also be made by deed in trust for the benefit of creditors, and in such cases the title passes under the deed to the trustee, even though the surplus, .if any, after payment of all debts, comes back to the grantor. But even in such cases it is usually regarded safer to make the grantor a party to the proceedings to sell the real estate conveyed by the deed of assignment.
While the instrument in question is not a straight, ordinary deed, it is claimed to be what is known as a trust deed, or deed in trust conveying the title to the bank, and out of Mr. Patton, so as to be good against the world, without record, except as against a subsequent bona fide purchaser without notice.
The question whether this instrument is a deed in legal effect as claimed, or a mortgage, is not without difficulty. The granting clause is that of an absolute deed of conveyance, and so is the habendum down to the word “forever;” and then, after a semicolon, comes the following:
“In trust, nevertheless, and upon condition that said Alexander G. Patton is to hold possession of said premises as fully as if this conveyance had not been made, until said The National Bank of Columbus shall require and make a sale thereof, as hereinafter provided, that is to say; this conveyance is made for the purpose of securing to said The National Bank of Columbus the sum of twenty-five thousand (|25,000) dollars, Avith interest thereon now past due and evidenced by the promissory note of said Patton heretofore executed and delivered to said bank, dated October 19, 1891, and it shall be lawful 'for said The National Bank of Columbus, after six months notice in writing, at any time within five *584 years from the date hereof, in ease said principal sum of twenty-five thousand ($25,000) dollars and the unpaid accrued interest thereon shall not be paid on demand, after the notice aforesaid, to sell said land at private sale or public auction, for cash or on credit, and apply the proceeds to the payment of whatever amount may then be due said bank on account of said indebtedness, principal and interest, and the surplus, if any, after such payment, shall be paid over to said Alexander G. Patton, and no payment or receipt of interest, or on account of said principal shall be taken, held or construed as an extension of time for payment of said past-due indebtedness ; and further, it is agreed and promised by said The National Bank of Columbus for itself, its successors and assigns, that if said Patton shall pay' said indebtedness and the interest thereon at any time, with or without demand, this deed shall be null and void, and a proper quit-claim deed of all interest in the premises aforesaid shall be executed by said bank to said Alexander G. Patton, his heirs and assigns forever.”
Everything contained in this trust part, of the instrument is inconsistent with, and irreconcilably opposed to, a deed passing title from Mr. Patton to the bank. He retains possession of the premises until the bank shall require and make a sale of the property. The conveyance is made for the purpose of seeurmg to the bank $25,000 evidenced by a past-due note. If not paid within five years the bank may sell the real estate after six months notice, and apply the proceeds upon the note, and pay the surplus, if any, to Mr. Patton. No extension shall be made, and if Mr. Patton shall pay the debt at any time, the deed shall be null and void, and the bank shall ex *585 ecute a quit-claim deed to Mr. Patton, his heirs and assigns forever.
If the instrument had been intended to pass title and not operate merely as a security, the bank would have taken immediate possession of the premises; it would not have stated that the conveyance was for the purpose of security; it would not have provided for a power of sale, because a grantee in an absolute deed may sell when and as he pleases; it would not have agreed to pay any surplus to Mr. Patton; it would not have agreed that upon payment of the debt the deed should be null and void; and it would not have agreed to make a quit-claim deed.
The trust part of the instrument is throughout in legal effect the same as the condition, or defeasance clause in a mortgage. Possession is retained by the grantor (mortgagor), the instrument states that it is for the purpose of security; a power of sale is given to the grantee (mortgagee); the surplus, if any, is to be paid to the grantor (mortgagor) ; upon payment of the debt the deed is to be null and void, and a quit-claim deed is to be made. Those are the ear-marks of a mortgage, and both upon principle and authority this instrument must be held to be a mortgage in so far as it concerns the rights of third persons. Martin v. Alter, 42 Ohio St., 94; Perkins v. Dibble, 10 Ohio, 434; Woodruff v. Robb, 19 Ohio, 212; Brantley v. Wood, 97 Ga., 755; Bennett v. Union Bank, 5 Humph., 612; Turner v. Watkins, 31 Ark., 429; Newman v. Samuels, 17 Iowa, 528; Eaton v. Whiting, 3 Pick., 484.
On principle and authority, the , rule seems to be, that if by the terms of such an instrument the grantor retains a vested interest in the premises, the instrument, in view of our recording acts, must be held to be, in legal effect, as to the rights of third per *586 sons, a mortgage; but if no vested interest remains in the grantor, the instrument will be regarded as a deed.
It is usual in deeds of trust made by railroad companies and other corporations, to independent trustees, securing bonds to be sold to raise funds, to make them in form so as to pass title, and with a power of sale; yet such instruments are held to be, in legal effect, only mortgages, and that when one such trust deed has been made, the company may make others, that in legal effect the company retains a vested interest as mortgagor in possession, and that upon default such trust deeds may be foreclosed as mortgages. A case in point in our own state is Coe v. Railroad Co., 10 Ohio St., 372.
Much stress is laid by plaintiff in error upon the promise in the instrument in question, upon payment of the debt, to make a quit-claim deed, and it is urged that that provision shows that the title passed. We do not so construe it. The instrument was evidently intended to serve as a mortgage security to the bank, but to be so far in the form of a deed as to permit its record in the record of deeds instead of mortgages, and it was so recorded. Under these circumstances, upon payment of the debt by Mr. Patton, the instrument, even though made null and void by such payment, could not be released as a mortgage upon the margin of the deed record, without leaving a blur upon the title, and therefore for the protection of the title in case of payment, the provision for a quitclaim deed was very properly inserted. But that provision did not make the instrument a deed, but was á strong confirmation of its being a- mortgage, because it showed that the grantor still had a vested interest in the property, the title to which he was careful to protect. The intention was to secure the *587 bank and shield Mr. Patton. That intention failed of its purpose, as is often the case, when the rights of third parties intervene. In such cases courts disregard mere forms, and consider the substance and legal effect of the transaction.
It is urged that as Mr. Patton was to hold possession of the premises until the bank should “require and make a sale thereof,” he was to hold possession until the bank should require possession and make a sale. The instrument will not bear that construction. The meaning is that he should hold possession until the bank should require a sale, and make a sale thereof.
The power of sale, instead of showing the instrument to be a deed passing title to the grantee, has the contrary effect, and aids in showing the instrument to be a mortgage, as no such power is necessary in a deed which passes title, because the deed, by its own vigor, carries with it a power of sale to the grantee, while a mortgage does not carry such power unless expressly granted therein. The power of sale in this instrument is in the nature of a power of attorney to sell and convey lands, in which case the legal title remains in the grantor until the power is executed.
The only purpose to be served, or advantage to be gained, by a power of sale in a trust deed or mortgage, is to enable the trustee to take possession of the property and sell it under the power, and thereby cut off the vested rights of the grantor without the aid or delay of a proceeding in court. The grantee may, however, refuse to exercise the power of sale, and invoke the aid of a court to make the sale as upon foreclosure; and where subsequent liens have attached, such a course becomes necessary, because a sale by the trustees would convey a title burdened with such subsequent liens. Until a sale shall be *588 made, either under the power or by the order of court, the grantor will retain his vested rights in the property, and such rights will be subject to liens the same as his other lands and tenements.
The agreed statement of facts also shows that about the middle of May, 1891, the bank took possession of the property and held possession thereafter until the levy of the execution thereon, and the plaintiff in error urges this fact as a point in its. favor. But this possession does not appear to have been by virtue of the instrument in question, but under some other arrangement between Mr. Patton and the bank. But even if it had been made under and by virtue of this instrument, it could not have aided the bank, because this possession was late in May, after the judgment had attached as a lien on April 7 of the same year. True the judgment was not recovered until in July, but it related back and became a lien from the first day of the term, April 7, and the rights of the parties are the same as if the judgment had in fact been recovered and entered on the first day of the term, though not recovered until July, and the conveyed the same to a purchaser on the day the bank took possession, the lien of the judgment would have attached to the property as of the first day of the term. If Mr. Patton had sold his property and lien would have continued against the property in the hands of such purchaser. It is because of this statute that when transactions in real estate take place during a term of court, search of the records must be made for pending actions.
The instrument in question being therefore in legal effect a mortgage, Mr. Patton owned and held the legal title, and the judgment in favor of the defendant in error became a lien on the property covered *589 by the mortgage on April 7, 1894, and the mortgage being then not filed for record, the judgment has priority over the mortgage, and must be first paid.

Judgment affirmed.